

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 06-10369 |
| Plaintiff - Appellee, | D.C. No. CR-03-00371 |
| v. | |
| MICHAEL DENNIS WILLIAMS, | MEMORANDUM [*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 06-10378 |
| Plaintiff - Appellee, | D.C. No. CR-03-00371-13-MCE |
| v. | |
| KENNETH DEANDRE RODGERS, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 06-10381 |
| Plaintiff - Appellee, | D.C. No. CR-03-00371-6-MCE |
| v. | |

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

SHONDOR JANELL ARCENEAUX,

    Defendant - Appellant.

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

    v.

DEREK LADONTE MADDOX,

    Defendant - Appellant.

No. 08-10042

D.C. No. CR-03-00371-MCE

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted February 8, 2010
San Francisco, California

Before: O'SCANNLAIN, TROTT and PAEZ, Circuit Judges.

Michael Dennis Williams, Shondor Janell Arceneaux, and Kenneth Deandre

Rodgers (collectively "Defendants") appeal their jury convictions of armed bank

robbery in violation of 18 U.S.C. § 2113(a) and (d) and use or possession of a

firearm in relation to a crime of violence in violation of § 924(c)(1). Derek

Maddox, tried separately, also appeals his jury conviction of armed bank robbery

and use or possession of a firearm in relation to a crime of violence in violation of the aforementioned statutes. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**Defendants Williams, Arceneaux, and Rodgers**

**1.** Defendants Williams, Arceneaux, and Rodgers jointly argue that the prosecution improperly vouched for the government's cooperating witnesses during closing argument and that this vouching was plain error requiring reversal.

When there is an allegation of vouching, we must determine (1) whether the conduct is vouching, (2) whether the misconduct is cured by instructions to the jury, and (3) whether the closeness of the case requires reversal. *United States v. Weatherspoon*, 410 F.3d 1142, 1145-46, 1151-52 (9th Cir. 2005).

During rebuttal, in response to an attack on the credibility of the government's cooperating witnesses, the prosecutor argued: "The Judge has been present for the whole entire trial as well as I have. And I can assure you that neither one of us are that gullible that we're going to fall for a bunch of lies." This statement suggests not only that the prosecutor and judge will and have assessed the credibility of the government's witnesses—a job for the jury alone—but also that the prosecutor and judge are working together. We agree with defendants that the prosecutor's statements constituted impermissible vouching. *See United States*

3

*v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992) (noting that a prosecutor must not invoke the authority of the court and that such vouching impermissibly casts the court as an active, albeit silent, partner in the prosecutorial enterprise).

The court's jury instructions did not address the specific vouching statements of the prosecutor, but the court instructed the jury on the factors to consider in judging witness credibility. As part of these instructions, the jury was instructed in the use of testimony given by cooperating witnesses and admonished to consider such witnesses' testimony "with great caution" and "with greater caution than that of other witnesses." Although the court's jury instructions did not cure the prosecutor's "vouching," the jury was properly admonished to view the cooperating witness testimony with "great caution."

As for the third factor, the case was not close. The testimony of the cooperating witnesses was corroborated by the testimony of government witness Dakina Sudduth.

Because this was not a close case and in light of the court's instructions, we conclude that the statements of the prosecutor, although error, did not seriously affect the fairness of the trial or constitute plain error requiring reversal. *See United States v. Molina*, 934 F.2d 1440, 1446 (9th Cir. 1991).

**2.**     Defendants allege additional prosecutorial misconduct.  Specifically, Defendants argue that the prosecutor's closing argument in which he asked the jury to convict defendants to "let justice come to the victims" and analogized the usefulness of cooperating witness testimony in this case to the use of a cooperating witness in an unrelated case involving the murder of a California Highway Patrol Officer was calculated to inflame the jury.

It is improper for a prosecutor to use argument that would inflame the passions or prejudices of the jury.  *Viereck v. United States*, 318 U.S. 236, 247-48 (1943).  Although we do not condone the argument used by the prosecutor in this case, plain error is a high bar.  In light of all the evidence, we conclude that the statements made by the prosecutor did not seriously affect "the fairness, integrity or public reputation of judicial proceedings."  *Johnson v. United States*, 520 U.S. 461, 469 (1997) (internal quotation marks omitted).  The prosecutor's statements do not warrant reversal.

**3.**     Next, Defendants argue that the district court abused its discretion and violated Defendants' Fifth and Sixth Amendment rights by permitting the government to present the direct testimony of three cooperating witnesses without immediate cross-examination of each witness.  Defendants argue that this

5

procedure was prejudicial because, on the eve of a four-day recess, the jurors only heard the government witnesses' version of Defendants' criminal conduct.

The Fifth Amendment protects a defendant's due process right to a fair trial, *United States v. Straub*, 538 F.3d 1147, 1161 (9th Cir. 2008), and the Sixth Amendment guarantees the right of a defendant in a criminal trial to confront and cross-examine the witnesses against him, *Davis v. Alaska*, 415 U.S. 308, 315 (1974). The district court, however, has broad discretion to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence." Fed. R. Evid. 611(a).

Here, the district court permitted the government to put on direct testimony of three of its witnesses without intervening cross-examination. The delay between direct and cross-examination was, in large part, due to the government's strict adherence to its disclosure obligations under the Jencks Act, 18 U.S.C. § 3500. To allow Defendants sufficient time to review the Jencks material that the government disclosed after each witness testified, the court deferred cross-examination, but proceeded with the direct-examination of the three witnesses.

In light of the broad discretion afforded the trial court in determining the order of proof and presentation of evidence, the government's strict compliance with the Jencks Act, and the fact that Defendants fully cross-examined all three

6

cooperating witnesses, the trial court exercised reasonable control over the order of examining witnesses. The court did not abuse its discretion in permitting the *in seriatim* direct-examination of three government witnesses.

**4.** In a related argument, Defendants contend that it is common practice for the government to provide early discovery of Jencks Act material to defendants. Here, the government first disclosed the Jencks material after each witness testified. This "delay," Defendants argue, prevented them from preparing effective cross-examination of the cooperating witnesses in violation of Defendants' Sixth Amendment rights.

Defendants' Jencks argument fails because the Jencks Act is clear. Irrespective of common practice, the defense is entitled to Jencks material only *after* the government's witness, to whom the documents relate, has testified. 18 U.S.C. § 3500; *see also United States v. Barker*, 988 F.2d 77, 79 (9th Cir. 1993). The court's failure to require the production of the Jencks material before the direct testimony of the government's witnesses was not an abuse of discretion. *See United States v. Alvarez*, 358 F.3d 1194, 1210-11 (9th Cir. 2004).

**5.** Defendants' argue that the district court erroneously denied their request for a hearing to determine whether the government made promises to witness Dakina Sudduth in exchange for her testimony.

7

Sudduth was romantically involved with defendant Arceneaux at the time of the robberies, and she rode with Arceneaux in one of the two vehicles to the location of the Financial Center Credit Union robbery. Furthermore, Sudduth rented the rooms at the Motel 6 where Defendants stayed the night before the Financial Center Credit Union robbery. Defendants argue that Sudduth could have been charged as an accomplice in this case.

In a criminal case, the prosecution has a duty to disclose all material evidence that is favorable to the accused. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (holding that an undisclosed deal with a key prosecution witness was a material non-disclosure). Here, the government maintains that there was insufficient evidence to charge Sudduth as an accomplice and that no deal was made in exchange for her testimony.

Without any evidence that Sudduth was offered compensation or consideration for her testimony, Defendants have failed to satisfy their burden of raising a substantive claim. *See United States v. Cooper*, 173 F.3d 1192, 1203 (9th Cir. 1999) (holding that defendants raising a *Giglio* claim must present more than circumstantial evidence of an immunity agreement to justify reversal). The district court did not err by denying Defendants a hearing on whether the government offered Sudduth a deal in exchange for her testimony.

8

**6.** Next, the defense requested a perjury instruction as it applied to cooperating witness Dwayne Slater. The government opposed the instruction. The trial court declined to give a specific instruction, and Defendants now argue that it was error to refuse Defendants' requested jury instruction.

"A criminal defendant has a constitutional right to have the jury instructed according to his theory of the case if it has some foundation in evidence." *United States v. Johnson*, 459 F.3d 990, 993 (9th Cir. 2006) (internal quotation marks omitted). However, "[i]t is not reversible error to reject a defendant's proposed instruction on his theory of the case, if other instructions, in their entirety, adequately cover that defense theory." *United States v. Dees*, 34 F.3d 838, 842 (9th Cir. 1994).

Here, the trial court's instruction to the jury included several admonishments regarding the credibility of cooperating witnesses. The instruction did not single out Slater, but it did name him along with the other cooperating witnesses and informed the jury that their testimony should be considered with great caution. Given the multiple cautions contained in the jury instructions, there was no error in refusing the requested jury instruction.

**7.** Defendants argue that even if no single trial error examined in isolation warrants reversal, the cumulative effect of multiple errors does. *See United States v. Wallace*, 848 F.2d 1464, 1475 (9th Cir. 1988).

As discussed above, the only alleged error that amounted to an actual error was the prosecutorial vouching. The vouching was not plain error when considered independently, nor does it rise to the level of plain error when considered in the context of the other alleged errors. *See United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000) (holding that "[o]ne error is not cumulative error").

**Defendant Arceneaux**

**8.** Defendant Arceneaux was convicted of three robberies. On appeal, he argues that there was insufficient evidence to convict him of either the Financial Center Credit Union robbery or the Farmers and Merchants Bank robbery.

When evaluating a claim of the sufficiency of the evidence to support a conviction, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Here, Sudduth testified to Arceneaux's involvement in the Financial Center Credit Union robbery, and Slater testified to Areceneaux's involvement in the Farmers and Merchants Bank robbery. Furthermore, to find Arceneaux guilty of armed bank robbery, it was enough to find that he aided and abetted in the commission of the crime. *See* 18 U.S.C. § 2(a).

Based on Sudduth's and Slater's testimony, a reasonable trier of fact could find the essential elements of armed bank robbery of the Financial Center Credit Union and the Farmers and Merchants Bank with the use of a firearm. *See Jackson*, 443 U.S. at 319. Therefore, Arceneaux's sufficiency of the evidence claim fails.

**Defendant Maddox**

9.     Defendant Maddox argues that the prosecutor inappropriately intimidated government witness Sudduth with a perjury warning. Maddox further argues that the warning affected Sudduth's testimony and denied Maddox a fair trial.

"It is well established that substantial government interference with a defense witness' free and unhampered choice to testify amounts to a violation of due process." *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005) (internal quotation marks omitted). Perjury warnings, however, are not improper per se and "the Sixth Amendment is not implicated every time a prosecutor or trial court

11

offers advice regarding the penalties of perjury." *United States v. Vavages*, 151 F.3d 1185, 1189 (9th Cir. 1998) (internal quotation marks omitted).

Here, the government warned its own witness, and the warning was relatively brief and factual. Furthermore, despite the warning, Sudduth testified at length and, regardless of her alleged fears, Sudduth largely recanted her previous testimony where she implicated Maddox. We conclude that the prosecutor's warning did not substantially interfere with Maddox's right to a fair trial.

10. Finally, Maddox argues that the district court committed reversible error when it denied Maddox the opportunity to cross-examine Sudduth on the subject of threats and the reason for her distressed demeanor in court.

In determining whether a defendant's right to cross-examination was violated, we consider (1) whether the excluded evidence was relevant; (2) whether there were other legitimate interests outweighing the defendant's interest in presenting the evidence; and (3) if the exclusion of evidence denied the jury sufficient information to appraise the biases and motivations of the witness. *United States v. Larson*, 495 F.3d 1094, 1103 (9th Cir. 2007) (en banc).

Even assuming that Maddox's right to cross-examination was violated, we conclude that any error was harmless beyond a reasonable doubt. *See id*. at 1107-08.

First, Sudduth's testimony was corroborated by the detailed testimony of cooperating witness Demond Vaughn and by the testimony of Maddox himself. During an FBI interview prior to trial, Maddox admitted he participated in the robbery and identified himself in a picture taken during the robbery inside the credit union. Second, Maddox extensively cross-examined Sudduth during trial, and Maddox specifically asked her which account of the facts was the true account. At that point, Sudduth largely discredited her earlier account of events and her previous identification of Maddox.

In sum, in light of the evidence corroborating Sudduth's testimony and the overall strength of the prosecution's case, Maddox fails to establish harmless error. The district court did not commit reversible error when it restricted Maddox's cross-examination of Sudduth.

AFFIRMED.